**Application of ARCHBOLD.**

**Patent Appeal No. 4989.**

Court of Customs and Patent Appeals.
June 22, 1945.

Rehearing Denied Sept. 26, 1945.

Harry Langsam, of Philadelphia, Pa., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

In this appeal from the decision of the Board of Appeals of the United States Patent Office, there are involved seven claims numbered 1 to 7. The examiner rejected all the claims on prior art and additionally rejected claims 6 and 7 as involving an improper Markush group. The board affirmed the rejection of claims 1 to 5 on the prior art but reversed the rejection of claims 6 and 7 on that ground. It however affirmed the rejection of those claims on the second ground.

Claims 1 and 7 are considered illustrative of the appealed claims and are descriptive of appellant's alleged invention. They read:

"1. In the manufacture of an abrasive article comprising the steps of a process

of mixing abrasive grains with a ceramic binder; adding an admixture of an organic temporary binder and a mixture of liquid volatile solvents to make the binder workable; mixing the abrasive grains, the ceramic binder and the temporary binder together; handmolding the admixture, separating the molded abrasive article and the mold, and exposing the molded abrasive article to ordinary room temperatures for a fraction of an hour whereby the molded abrasive article may be handled."

"7. In the manufacture of an abrasive article comprising the process of mixing abrasive grains with a ceramic binder, adding an admixture of an organic temporary binder and a liquid volatile solvent to make the admixture workable, said volatile solvent of the class of a lower alcohol, ketones, acetone, or ethyl acetate, benzene, or ether; the temporary ceramic bond stirred until a uniform or homegeneous mixture results in a semi-plastic consistency, said mixture exposed to the air for approximately ten minutes so that the material can be handled after the solvent has evaporated, said molded article being fired in a ceramic kiln to burn out the temporary binder and to vitrify the ceramic bond."

The references are:

Anderson, 1,458,376, June 12, 1923.
Wooddell, 1,918,312, July 18, 1933.
Milligan et al., 1,987,861, Jan. 15, 1935.
Benner et al., 2,046,764, July 7, 1936.
Merriam, 2,117,970, May 17, 1938.
Carter et al., 2,121,018, June 21, 1938.
Milligan et al., 2,158,034, May 9, 1939.
Ljungberg, 2,082,545, June 1, 1937.

Appellant's reasons of appeal relative to the rejection of claims as anticipated by the prior art are embraced in the following specific argument set forth in his brief:

"The prior art patents to Anderson, Benner, Milligan and Armitage, Benner et al., Ljungberg, and Milligan and Lombard fail to mention any type of room temperature volatile solvent for dissolving the temporary binder; the patents to Wooddell, and Carter annd Heinz mention water as a solvent for the temporary binder; and the aforementioned prior art patents completely ignore the problems of (1) defective products arising during the course of manufacture, and (2) the problem of expediting the manufacture of the product."

With due deference to appellant's contention that "the aforementioned prior art patents completely ignore the problems of (1) defective products arising during the course of manufacture, and (2) the problems of expediting the manufacture of the product," it may be noted, for example, that as far back as 1923, the following suggestive facts were disclosed in the specification of the patent to Anderson:

"The usual method of making vitrified wheels is to mix with the granular abrasive material, which is the basic element of the wheel, a vitreous bonding material, molding the mixture into the desired form and baking or firing it in a kiln at a temperature sufficiently high to fuse or vitrify the bonding material, which acts as a cement to bind the mixture into a solid mass of great mechanical strength. Before firing, this composition or mixture is very fragile; it may even be described as tender, and for this reason there has always been considerable loss through breakage or mutilation of the wheels in the handling which they are necessarily subjected to before the firing begins. Various expedients have been tried for eliminating or even reducing this loss, but with only partial success. In making the very thin wheels that the grinding art now demands the loss is very great, even as much as eighty-five percent in some cases. Furthermore, the extreme fragility of the raw composition has been found to impose a practical limit on the thinness of the product.

"In order to overcome the difficulty and eliminate the losses described, which of course occur in making all kinds of ceramic products, and also enable the wheelmakers to meet the demand for still thinner wheels, I conceived the idea of using a temporary bond to give greater strength to the composition in its transitory stage. After much experimentation *I have found a phenol resin the most satisfactory material for the temporary bond, although there are other resins, and even other substances that answer the purpose more or less well. The resin volatilizes and is dissipated before the temperature has arisen to the point necessary for the fusion of the vitreous bonding material.* * * *" [Italics supplied]

The patent to Merriam discloses:

"It is one purpose of the present invention to completely obviate the necessity for kiln firing in the production of vitrified abrasive wheels."

The patent to Carter et al. discloses:

"Another object of the invention is to achieve some or all of the foregoing objects avoiding slumping of the product in the kiln."

Moreover, the enumerated references disclose a common practice in the manufacture of an abrasive article to mix the basic granular and ceramic bonding material with a liquid volatile solvent for the purpose not only of fashioning the semi-plastic admixture into the model that the article is to have as a finished product, but also to preserve the semi-plastic article intact during its transitory development, including the first stages of firing in a kiln. The references disclose further that the temporary binder ordinarily may comprise a solution in water or a suspendible liquid which is subsequently removed during the firing.

Appellant urges that the type of liquid volatile solvent employed by him will readily dissolve the temporary binder at room temperature without the necessity of applying any artificial heat or using an evaporator of any sort. The essence of his alleged invention is the use of any substance soluble in a volatile solvent whose boiling point is lower than that of water.

The examiner and the Board of Appeals have analyzed the enumerated references and have shown that the solvents specified in the respective patents are substantially the equivalent of the solvent described in appellant's application and as correctly pointed out in the decision of the board:

"Claims 1 to 5 are in broader terms merely requiring a liquid volatile solvent or a mixture of liquid volatile solvents in this relation. This term is clearly directly readable upon water which is disclosed by practically each of the references relied upon by the examiner."

■ Appellant here lays great stress upon the limitation in claim 1 which defines "exposing the molded abrasive article to ordinary room temperatures for the fraction of an hour whereby the molded abrasive article may be handled." It has been noted above that the elements of the claim are not limited to the use of any particular volatile solvent and therefore the mere recital of a specific drying time at room temperature is not of itself sufficient to constitute patentable invention over the prior art. Furthermore, even if the references did not mention any type of room temperature volatile solvent for dissolving the temporary binder, it does not follow that they are deficient as anticipatory references.

■ The holding of the tribunals of the Patent Office that the several materials defined in claims 6 and 7 did not constitute a proper Markush group, was a correct decision in view of the indefinite form of statement in claims 6 and 7, caused by the use of the word "or," which introduced the element of uncertainty as to the scope to be attached to the members of the group.

■ Appellant complains that the examiner rejected the claims on the ground of alternative expression only after appellant had appealed to the Board of Appeals. Under such circumstances, appellant had the right to have the question reconsidered by the Examiner. By failing to request a reconsideration of the matter, appellant has now waived that right. Ex parte Mevey, 1891 C. C. 115.

■ Appellant contends that the board committed reversible error in failing to give a proper consideration to the unexpected and useful results obtained by the process described in his alleged invention. There are no facts in the record which disclose such results and the Court cannot sustain an appeal on the unsupported statements made in the brief or oral argument of counsel.

■ The record establishes that appellant's alleged invention as defined by the appealed claims consists merely in the discovery that the drying time required to dissolve the temporary binder in the manufacture of ceramic bonded articles is reduced if a more volatile solvent is substituted for water. This fact is a matter of common knowledge and does not constitute invention.

Other questions in the case are not of sufficient importance to require statement and discussion in this opinion, since the record fully warrants the rejection of the appealed claims for the reasons stated in the decision of the Board of Appeals.

Affirmed.