37 C.C.P.A. (Patents)

### Application of JAPIKSE.

### Patent Appeal No. 5634.

United States Court of Customs and Patent Appeals.

May 9, 1950.

Ernest F. Mechlin, Washington, D. C. (George F. Vaia, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

W. W. Cochran, Washington, D. C., on the brief as former solicitor for Patent Office.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, JJ.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of ten claims, numbered 3, 4, 5, 6, 11, 12, 13, 14, 15, and 20, embraced in appellant's application, serial No. 511,619 for patent entitled "for Hydraulic Power Press."

Eight claims stand allowed.

Rejection of the claims on appeal was based by the tribunals of the Patent Office on alleged lack of invention over prior art.

Of the allowed claims two (Nos. 16 and 19) were granted by the board, the examiner's rejection of them being reversed.

Claim 6 was regarded by the board as illustrative of the appealed claims. It reads: "6. In a hydraulic power press, the combination of, supporting means in vertical alignment with a movable platen, a pair of transfer tables spaced on opposite sides of

said supporting means and carrying transfer plates, means depending from said transfer plates and arranged to pass through an aligned opening in said supporting means, fluid pressure responsive means connected to said depending means for moving said transfer plates on to said supporting means, and means disposed adjacent each end of said opening for contact by said depending means upon completion of movement of said transfer plates in one direction so as to initiate the pressing cycle of the hydraulic power press.".

In his statement following the appeal to the board, the Primary Examiner made an explanation of appellant's disclosure, which we reproduce, omitting the figures of the drawings as indicated by asterisks but retaining the designating numerals and letters, it being thought that they will aid those skilled in the art to visualize the essential features of the apparatus:

"The subject matter is a hydraulic press equipped with a plurality of transfer tables so that work pieces may be properly positioned on one or more of such tables while another table is beneath the movable press platen.

"The press comprises a stationary platen or bolster 2 * * * from which rise columns 4 * * * for guiding the upper, movable, platen 5. Spaced about the bolster 2 are four tables designated A, B, C, D * * *. Each table comprises a rectangular framework supporting, at its upper end, two rows of rollers 18 * * * on which rests a transfer plate 19. The bottom of each plate 19 is slightly above the top of bolster 2, for a reason which will soon appear.

"Depending from each plate 19 is a guide plate 20 * * * guided for longitudinal movement by rails 28 and 32. Plate 20 is adapted to enter a slot 21 or 21a * * * in bolster 2 in order to properly position it with respect to the bolster. Plates 20 of tables A and C enter slot 21, while slot 21a receives plates 20 of tables B and D.

"Each table housing supports a cylinder 36 * * * whose piston rod 37 is connected to a yoke 40 having spaced, horizontal, legs 41, 42 which support a shaft

46 on which is freely rotatable a double gear 47 * * *. The large gear portion 48 of gear 47 engages a rack 50 carried by plate 20, while the small gear portion 49 engages a rack 51 carried by the table housing. As fluid is supplied to cylinder 36 to cause rod 37 and yoke 40 to move in one direction or the other, small gear 49 rolls on rack 51 and causes large gear 48 to move rack 50 and transfer plate 19 at higher speed toward or away from bolster 2.

"The bolster carries a series of roller mechanisms 52a, 52b * * *. As shown * * *, each such mechanism comprises a roller 62 held up by a spring 60 so that its top extends above bolster 2 in position to just contact the bottom of a plate 19 when the latter is moved over the bolster and off its conveyor rollers 18. When platen 5 lowers to engage the work on plate 19, the latter will descend to engage bolster 2, compressing springs 60 and lowering rollers 62.

"Roller mechanisms 52a serve tables B and D, while mechanisms 52b serve tables A and C. The bottom of each plate 19 carries grooves 19a so placed that the plate will not contact rollers 62 of the other set of plates.

"Since tables B and D are narrower than the bolster * * * the end portions of slot 21 would be exposed and liable to catch foreign matter when the plate on table B or D is on the bolster 2. To prevent this, the bolster top at the ends of slot 21 is recessed as at 63 * * * to receive lids 64 which are urged by springs 77 to a position covering slot 21 * * *. When the plate 19 on table A or table C starts to move over the bolster, a cam 72 * * * carried by guide plate 20 engages rollers 71 * * * and moves lids 64 out of the way to permit plate 20 to enter slot 21. This lid structure is included in all the allowed claims.

"Each table has three limit switches 78, 80 and 81. Pressing switch 78 starts the associated plate 19 moving toward the bolster 2. A lug 84 on yoke 40 then opens switch 80 to cause plate 19 to gradually slow down. Just before plate 19 stops, some part on it contacts lever 82 to cause switch 81 to complete a circuit resulting in platen 5

starting a pressing cycle. Just before platen 5 returns to its upper position, it operates a limit switch 85 * * * resulting in movement of plate 19 off the bolster 2."

Certain questions of a preliminary nature are discussed in appellant's brief before us to which attention should be given at this point.

■ We first consider a contention that a question of jurisdiction is involved.

During the prosecution of the application before the Primary Examiner five patents were cited as references. The five were specifically named in a decision of the Primary Examiner rendered March 24, 1945, and were repeated in a decision by him rendered April 10, 1946, which he declared to be his final decision.

The patents so cited are:

Ernst, et al., 2,009,487, July 30, 1935, 100-71; Graham, 2,241,344, May 6, 1941, 113-38; MacMillin, 2,259,576, Oct. 21, 1941, 113-38x; Cannon, 2,317,440, Apr. 27, 1943, 113-38; Dievers, 2,332,135, Oct. 19, 1943, 113-38.

From that final decision appellant took appeal to the Board of Appeals.

The examiner's statement following the appeal to the board lists the above references in the customary manner and then says:

Added as of Interest:

Arndt, 2,247,464, July 1, 1941, 37-157; Strauss, 1,150,153, Aug. 17, 1915, 74-422, "507 Mechanical Movements"—Figs. 118—pages 32 and 33—Copy in Division 14, Published 1908 by Brown & Seward, 261 Broadway, N.Y.C.

The document so "added as of interest" do not appear to have been referred to previously in the prosecution of the application and it was alleged that the board erred in considering them "as qualifying references."

It is not clear to us just what the examiner meant by the phrase "added as of interest." The documents do not seem to have been given any particular weight in the decisions.

In the examiner's statement the added documents are referred to first in connection with the rejection of claims 11 and 13,

which claims, however, the statement asserted, had been rejected "on either Cannon or Dievers" before any reference was made to the added matter, it being said: " * * * Claim 11 attempts to distinguish from the references only in stating that 'floating' means within the table structure moves the table cover or transfer plate. This expression is broad and does not distinguish from swinging cylinder 36 of Dievers of [or] from Cannon's rack and pinion cover drive. Claim 13 attempts to distinguish by the functional statement that the drive means is constructed to move less than the cover or transfer plate. * * * Cannon uses reduction gearing between motor 55 and pinion 54, and could use speed increasing gearing instead without invention, since no more than design or choice is here involved. * * * These claims actually attempt to distinguish over the references by a broad and functional recital of applicant's double rack and pinion structure, which structure the examiner stated was well known (paper No. 5), *and in which statement applicant concurred*, (paper No. 6, pages 7 and 8)." [Italics ours].

The documents are referred to again in the examiner's statement in connection with rejected claims 12, 14, 15, and 20, after they had been expressly rejected on the patent to Cannon alone, "from which," says the statement, "they differ only in varied recitals of the double rack and pinion drive of the transfer tables. * * * No more than skill would be required to replace Cannon's geared transfer plate drive with this well-known double rack and pinion drive."

The matter "added as of interest" was referred to by the tribunals of the Patent Office only in connection with rejected claims 11, 12, 13, 14, 15, and 20, which embraced the so-called "rack and pinion" feature.

A careful study of the decision of the board seems to us fairly to show that it regarded claims 11, 12, 13, 14, 15, and 20 rejectable independently of the added matter to which it referred as "the three secondary references." In fact, no allusion to such matter is found in its approval of the Primary Examiner's rejection of claims 11 and 13 on Cannon or Dievers, and such allusion

as is made to it in approving the rejection of claims 12, 14, 15, and 20 on Cannon appears to have been made in order to make clear the point, i. e. "mounting a rack of a double rack and pinion driving means on one of the beaver tails," which led the board to reverse the Primary Examiner's rejection of claim 16.

It is noted that three different examiners had to do with the case in the Patent Office. It was prosecuted before one to the point of final decision. Another prepared the statement following the appeal to the board and added the matter under discussion. A third filed a brief in reply to the brief filed before the board on behalf of appellant, which latter brief is not included in the record before us.

We think it regrettable that if, the examiner who prepared the statement following the appeal to the board was of opinion that the prior art cited in the decision declared final by the first examiner was so deficient that the citation of additional art was required, he did not indicate that opinion clearly, because much confusion might have been avoided thereby. We, however, do not find that any question as to the jurisdiction of the board may properly be invoked under the facts stated, nor do we find any error in such consideration as the board gave the added matter.

It is our view that if appellant regarded the added matter a new ground of rejection and desired reconsideration of such matter by the Primary Examiner he should have made request for such reconsideration before prosecuting further the appeal to the board. See In re Archbold, Jr., 151 F.2d 350, 33 C.C.P.A. Patents 725. We do not find wherein appellant has been deprived of any legal right.

■ Another question discussed in the brief for appellant relates to the operativeness of the device disclosed in the Cannon patent. The board said of this: " * * * Appellant objects to the use of this [the Cannon] patent as a reference because of alleged inoperativeness. Such inoperativeness concerns the shape of the beaver tails * * *. Appellant contends that as illustrated it is impossible for them to either enter or leave the space between the two rollers * * * unless the end of the transfer table is lifted. While this appears to be true if the patent drawings are considered as drawn to scale, patent drawings are not necessarily scale drawings. The Examiner argues that it is only a matter of design to extend the curvature of the beaver tails about a sufficiently large arc and to allow enough clearance to permit the beaver tails to ride into and out of the space between the rollers. Since the cure for the alleged inoperativeness is obvious, it cannot be held to affect the validity of the Cannon patent as a reference."

We do not find in the reasons of appeal any allegation of error as to the holding so made, and, it may be said, we discern no reason for disagreeing with such holding.

The Cannon patent is the basic reference cited against all the appealed claims. Appellant seeks to eliminate it as to all the claims upon the ground of inoperativeness. For the reasons stated, we hold that it may not be eliminated.

We paraphrase the description given by the Primary Examiner of the Cannon disclosure:

Cannon shows a press base adapted to cooperate with a movable platen which is operated by hydraulic pistons in opposite directions. On the base is a bed adapted to cooperate with six tables, each of which supports a die carrier. Each carrier runs on rollers guided in channels. When a carrier is positioned on the bed, its rollers rest on plugs which are yieldingly supported. When the movable platen engages the die on one of the carriers, plug springs will yield to permit the bottom of that carrier to rest on the bed. On the bottom of each carrier is a longitudinal rack with which a pinion engages, the pinion being driven through reduction gearing by a reversible electric motor, whereby the carrier may be moved toward or from the bed. At its ends each rack carries depending beaver tails which cooperate with rollers on a pinion to start and stop the racks gradually. These beaver tails enter slots in the bed to guide the carrier in its movement over the bed. Each carrier mounts a series of dogs

adapted to coact with limit switches to control its operation.

■ Claim 3 reads as follows: "3. In a hydraulic power press, the combination of, supporting means in vertical alignment with a movable platen, oppositely disposed transfer tables having covers of substantially the same horizontal extent as said supporting means, movable means carrying said covers on to and away from said supporting means, means depending from said covers and arranged to pass through an aligned opening in said supporting means, and means disposed in alignment with said opening for contact by said depending means to start the pressing operation of said hydraulic press."

In the brief of the Solicitor for the Patent Office it is pointed out that the claim reads on Cannon except as to the final limitation reading "means disposed in alignment with said opening for contact by said depending means to start the pressing operation of said hydraulic press." As to that limitation it was held that there would be no invention in shifting the starting switch disclosed by Cannon to a different position since the operation of the device would not thereby be modified.

We find no error in the holding as to claim 3.

Claim 4 reads: "4. In a hydraulic power press, the combination of, supporting means in vertical alignment with a movable platen, a plurality of pairs of transfer tables spaced about said supporting means and carrying transfer plates, means depending from said transfer plates and arranged to pass through aligned openings in said supporting means, resiliently mounted roller means in said supporting means for receiving said transfer plates, and fluid pressure responsive means connected to said depending means for moving said transfer plates on to said roller means."

Claim 4 was rejected on Cannon in view of Graham and Ernst, et al., or MacMillin and also further rejected on Dievers in view of Graham.

It is noted that the first portion of the claim down to the word "resiliently" is substantially the same as the first portion of claim 3 and is readable on Cannon in the same manner.

It appears that Cannon provides resiliently mounted plugs upon which his transfer plates rest instead of resiliently mounted rollers which latter, however, are shown by the Graham patent. Both Ernst, et al., and MacMillin disclose fluid pressure means for moving transfer plates and it is not thought that any invention would reside in substituting such means for the electric motor shown by Cannon.

It is unnecessary to consider the rejection on Dievers in view of Graham, which was introduced for the first time in the statement following the appeal to the board.

The board approved with little comment the rejection of claims 5 and 6 (see 6, supra) by the Primary Examiner who in his statement concerning them said: "Claims 5 and 6 aggregate the features specified in claims 3 and 4, namely, the fluid actuating of the transfer plates, the specific location of the starting switch and the roller supporting for the tables. These claims stand rejected on Cannon in view of Graham and Ernst [et al.] or MacMillin for reasons stated against claim 4. The relocation of Cannon's switch A–42 so that it may be operated by beaver tail 62 instead of by dog A–2 is devoid of invention."

We think it obvious that claim 5 and 6 were properly rejected.

Further discussion of appealed claims 11, 12, 13, 14, 15, and 20 is not thought to be necessary. The decision of the board is affirmed.

Affirmed.